# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JAMES LUKAS BURGE,**	) | |
| )	 | |
| **Plaintiff,**	) | |
| ) | |
| v.	) | Case No. CIV-19-141-RAW-SPS |
| ) | |
| **COMMISSIONER, Social** ) | |
| **Security Administration,**	) | |
| ) | |
| **Defendant.**	) | |

## REPORT AND RECOMMENDATION

The claimant James Lukas Burge requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-nine years old at the time of the administrative hearing (Tr. 34). He attended school up to the ninth or tenth grade while attending special education classes and has worked as a wrapper and general laborer (Tr. 21, 252, 358). The claimant alleges that he has been unable to work since December 31, 2013, due to post-traumatic stress disorder (PTSD), high anxiety disorder, panic disorder with major phobia, and disability with regard to reading, writing, and math (Tr. 251).

## Procedural History

On November 29, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and he applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 27, 2016. His applications were denied. ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 27, 2018 (Tr. 13-23). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), except that he could only occasionally climb

ramps/stairs/ladder/scaffolds, stoop, kneel, crouch or crawl, but that he could frequently balance. Additionally, the ALJ found that the claimant could perform simple tasks with routine supervision, have occasional interaction with supervisors and coworkers but no interaction with the general public, that he could respond appropriately to changes in a routine work setting, and that time off task could be accommodated by normal work breaks (Tr. 18-19). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, bakery racker, bottling-line attendant,[2] and small product assembler (Tr. 21-22).

## Review

The claimant contends that the ALJ erred by: (i) failing to account for all of his severe impairments in formulating the RFC, including his illiteracy, which ultimately resulted in errors at step five, and (ii) failing to properly account for the opinion of a treating physician. The undersigned Magistrate Judge agrees with the claimant's first contention, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of anxiety, borderline v. mild intellectual disability, PTSD, depression, and osteoarthritis (Tr. 16). The claimant's high school transcript indicate that the claimant failed math, writing, and essay, and that his final reading skills grade was an "F" (Tr. 358). The claimant's mother completed a Third Party Function Report in which she stated that she filled out money

---

[2] The ALJ mistakenly wrote "embalming attendant" instead of "bottling-line attendant" in his written opinion, but correctly cited to the Dictionary of Occupational Title citation as given by the vocational expert at the Administrative Hearing. This scrivener's error does not affect the undersigned Magistrate Judge's recommendation as set forth below.

orders for him because he cannot read or write, and that he had a hard time following instructions for the same reason (Tr. 261, 263). The claimant's aunt completed his own function report for him because he cannot read or write (Tr. 266-273).

On February 2, 2017, Dr. Kathleen Ward conducted a mental status examination of the claimant and assessed him with unspecified depression with anxious distress, rule out borderline v mild intellectual disability, and PTSD (Tr. 414). She noted his own report that he cannot read and write and estimated that his intellectual abilities were in the lower ranges and that he had deficits in social judgment and problem solving (Tr. 411, 413). The following month, clinical psychologist B. Todd Graybill, Ph.D., administered the WAIS-III IQ test, in which the claimant obtained a Verbal IQ of 71, a Performance IQ of 74, and a Full Scale IQ of 70, placing him in the range of borderline intellectual functioning (Tr. 426). Dr. Graybill stated that the claimant was not able to read and write but was able to perform simple arithmetic calculations (Tr. 426). Dr. Graybill's summary of the testing indicated that the claimant was functioning in the borderline range intellectually; that he could understand, retain, and follow simple instructions; that his attention span and concentration abilities were impaired commensurate with his overall intellectual level; and he was nervous and naïve in his manner (Tr. 427).

State reviewing physicians also noted that claimant's reports of being unable to read or write, and appeared to assess him with borderline intellectual functioning and an unspecified intellectual disorder (Tr. 90, 109) but appeared to also evaluate him as "Any Age Any Ed Any Skill Level" for their RFC assessment rather than his illiteracy (Tr. 114).

At the administrative hearing, the claimant testified that he was in special education classes when he was in school, that he cannot read or write, and that he had to have his driver's license test read to him, but that he can sign his own name (Tr. 37, 40, 53, 66). He further testified that he had been in prison but had not gone through any education while in prison because they did not have special education teachers available for him (Tr. 61). At the hearing, a vocational expert (VE) testified by classifying the claimant's past work, then responded to a series of hypotheticals posed by the ALJ (Tr. 66-72). The VE's testimony was based on a hypothetical person with the same age and education as the claimant, but the ALJ did not specify an education level in describing this hypothetical person (Tr. 68-69).

In his written opinion, the ALJ summarized the claimant's testimony and most of the medical records. The ALJ noted Dr. Graybill's WAIS-III testing results at step four but did not specifically address the claimant's illiteracy (Tr. 19). He agreed that the claimant had borderline intellectual functioning, but found the claimant could retain, understand, and follow simple instructions and his concentration had been described as good (Tr. 19). The ALJ assigned great weight to Dr. Graybill's opinion that the claimant would be able to understand, retain, and follow instruction and his attention span was impaired (Tr. 20). He then found the claimant unable to perform his past relevant work, classified the claimant's education as "limited," and concluded that there were other jobs he could perform (Tr. 21-22).

The claimant argues that the ALJ failed to account for his inability to read and write, which affected both the step four and step five findings. The undersigned Magistrate judge

-6-

agrees. "[T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 C.F.R. §§ 404.1564(b), 416.964(b). Although a ninth or tenth grade level of formal education is generally classified as a "limited education," *see* 20 C.F.R. §§ 404.1564(b)(3) and 416.964(b)(3), the regulations *do allow* for that classification to be modified where, as here, there is evidence that the claimant's actual educational abilities contradict the completed grade level. In this case, the claimant, Dr. Ward, Dr. Graybill, and two family members all indicated that the claimant was illiterate. However, "limited education" is defined as "ability in reasoning, arithmetic, and language skills but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs," and encompasses formal schooling from seventh through eleventh grade. *See* 20 C.F.R. §§ 404.1564(b)(3) and 416.964(b)(3). In contrast, "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. §§ 404.1564(b)(1) and 416.964(b)(1). Despite the evidence in the record to the contrary, the ALJ nevertheless found without explanation that the claimant had a limited education. *See Dollar v. Bowen*, 821 F.2d 530, 535 (10th Cir. 1987) ("The record establishes that Mr. Dollar, although able to sign his name, was functionally illiterate and able to manage only simple financial transactions that do not require reading or writing. A review of the record has revealed absolutely no evidence to the contrary. . . . As a matter of law, the application

of grid rules based on his eighth grade education was in error. Thus, the record does not contain substantial evidence to support the ALJ's implicit finding that Mr. Dollar was literate.") [internal citations omitted].

Additionally, the ALJ erred in properly evaluating the opinion provided by Dr. Graybill. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ recited Dr. Graybill's IQ assessment favorably in support of his determination that the claimant had borderline intellectual functioning, and also was aware that Dr. Graybill limited the claimant to simple work (Tr. 19). Nevertheless, the ALJ determined, without explanation as to the conflict, that the claimant had a limited education

rather than that he was illiterate (Tr. 21).  *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) *and Hamlin*, 365 F.3d at 1219.  *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted].

The above-mentioned error regarding the claimant's education level was not harmless.  In this case, the ALJ found that the claimant could perform less than the full range of light work, and the ALJ turned to a vocational expert (VE) at the administrative hearing to determine what kind of work the claimant could perform.  When given a hypothetical including a person the same age, [unspecified] education, and past relevant work as the claimant, and the ability to do light work with the additional limitations as described above, the VE testified that such a person would be able to perform the jobs of bakery racker, bottling line attendant, and small product assembler (Tr. 69).  The ALJ did not ask further questions about the claimant's education level or the skill level, and ultimately found that the claimant had the above RFC, and that he could perform the jobs identified by the VE (Tr. 21-22).  This is error because all three of the jobs identified by the VE, as defined in the Dictionary of Occupational Titles, require a Level 1 reading level, which is defined as: "Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 works per minute.  Compare similarities and differences between words and

between series of numbers." *See* DICOT §§ 524.687-018 (Racker, bakery product industry), 920.687-042 (Bottling-Line Attendant), 706.684-022 (Small Product Assembler). Because the ALJ failed to reconcile the claimant's inability to read with a finding that he can perform jobs requiring him to read 2,500 two- and three-syllable words, his decision is not based on substantial evidence.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further proceedings. On remand, the ALJ should resolve the conflict as to the claimant's literacy and the skill level of the work he can perform, and determine what impact, if any, such resolution has on the issue of the claimant's disability.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 27th day of April, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**